**BURCH & CRACCHIOLO, P.A.**
702 E. OSBORN ROAD, SUITE 200
PHOENIX, AZ 85014
TELEPHONE 602.274.7611

John D. Curtis II, SBA #019726
jcurtis@bcattorneys.com
Matthew J. Skelly, SBA #033407
mskelly@bcattorneys.com

*Attorneys for Joshua Ortega, Suzanne Beattie, and Ralph Ortega*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joshua R. Ortega, individually and on behalf of statutory wrongful death beneficiaries,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | Case No. 3:19-cv-08110-PCT-JAT<br><br>**AMENDED COMPLAINT** |

Statutory Plaintiff Joshua Ortega, individually and on behalf of all statutory wrongful beneficiaries, as follows:

## NATURE OF ACTION

1. Statutory Plaintiff, as statutory beneficiaries under Arizona law, bring this civil action for the wrongful death of Sonia Ortega against defendant the United States of America ("USA")

2. Statutory Plaintiff is the son, and statutory beneficiaries are the mother and estate of the father respectively of Sonia Ortega, who died after being detained by Navajo Tribal Police in Kayenta, Arizona.

3. Sonia was traveling from her home in Las Vegas, Nevada through the Navajo Nation on her way to visit her family in New Mexico.

1     4.     Sonia had a stroke, which the Navajo Tribal Police officers erroneously
2 determined was alcohol intoxication.

3     5.     Rather than call for medical assistance or take her to a nearby hospital, the
4 Navajo Tribal Police officers ordered Sonia to stay the night at an adjacent hotel.

5     6.     Sonia was ordered by the Navajo Tribal Police officers who detained her to
6 leave her car keys at the front desk and not to leave until the following morning.

7     7.     Sonia was found dead the following morning in the hotel room where she
8 was detained.

9     8.     An autopsy established that Sonia had no alcohol in her system.

## JURISDICTION AND VENUE

11     9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §
12 1346(b)(1), as the claims arise out of the negligent or wrongful acts or omissions of
13 employees of the USA while acting within course and scope of their employment.

14     10.     Plaintiff and statutory beneficiaries each filed separate Form 95s setting
15 forth the basis for their claims against the USA with the Office of General Counsel,
16 General Law Division, Claims Office on April 5, 2018.

17     11.     More than 180 days have elapsed since the filing of the Form 95s and no
18 action has been taken by the USA since the filings.

19     12.     Plaintiff and statutory beneficiaries have exhausted their administrative
20 remedies as required by the Federal Tort Claims Act ("FTCA") as a prerequisite to
21 bringing the present suit.

22     13.     Venue is appropriate pursuant to 28 U.S.C. § 1402(b), as a substantial part
23 of the events or omissions giving rise to the claims occurred within this judicial district.

## PARTIES

25     14.     Plaintiff Joshua R. Ortega is the son of decedent Sonia Ortega.
26     15.     Statutory beneficiary Suzanne C. Beattie is the mother of decedent Sonia
27 Ortega.

28

16. During the pendency of this action, Sonia's father Ralph I. Ortega died. His wrongful death claims are being pursued by his estate through its personal representative Jennifer Ortega.

17. Sonia Ortega, the decedent whose death is the subject of this matter, was 55 years old at the time of her death on November 24, 2017.

18. Defendant USA is sued as the employer of the Navajo Nation tribal officers who detained Sonia.

19. The Navajo Nation tribal police department is funded, at least in part, through a contract with the USA authorized by the Indian Self-Determination Education Assistance Act, 25 U.S.C. §2301 *et seq*.

20. The tribal police who detained Sonia were acting in the course and scope of their employment with the USA.

## FACTUAL ALLEGATIONS

21. On November 23, 2017, Sonia Ortega was driving from her home in Las Vegas, Nevada to visit her family in New Mexico for the Thanksgiving holiday.

22. At approximately 8 p.m., while traveling through the Navajo Nation, Sonia was found wandering about a gas station parking lot in Kayenta, Arizona.

23. Local tribal police responded to the gas station.

24. Although apparently not arrested, Sonia was taken into custody and brought to the nearby Kayenta Monument Valley Inn in Kayenta, Arizona.

25. The tribal police officers also brought Sonia's car to the hotel.

26. The tribal police officers ordered Sonia to check into the hotel and remain there until the following morning.

27. The hotel clerk was given Sonia's car keys and instructed not to allow Sonia to leave until the following morning.

28. The tribal police officers then escorted Sonia to her hotel room and left her sitting in a chair in the room.

29. When Sonia did not arrive at her destination, her family began frantically trying to locate her.

30. Early the following morning, Sonia's brother Christopher Ortega began driving from New Mexico in hopes of locating Sonia.

31. Sonia's son Joshua, who is an officer with the Nevada Highway Patrol, accessed Sonia's credit card information and located a charge at the Kayenta Monument Valley Inn.

32. Joshua informed Christopher of the charge and since Christopher was near Kayenta, he made his way there.

33. Before Christopher arrived, Joshua contacted the front desk at the Kayenta Monument Valley Inn and learned that Sonia had indeed checked in the previous evening.

34. Joshua asked to be put through to Sonia's room, but no one answered. He then asked hotel staff to attempt to contact her.

35. Hotel staff subsequently entered Sonia's room and found her dead in the same chair where the tribal police officers had left her the previous evening.

36. The bed in the hotel room had not been slept in and there was no indication that she had moved from the chair.

37. By the time Christopher was allowed into the hotel room, Sonia had been placed in a body bag.

38. The subsequent autopsy indicated that Sonia had died of a stroke.

39. The toxicology report indicated that Sonia had no alcohol in her system.

40. Sonia was a bartender in Las Vegas and always carried cash, especially when she was travelling.

41. An inventory of Sonia's property by the tribal police did not indicate any cash in Sonia's possession.

42. A tribal police report for the time period following Sonia's death was provided to Sonia's family.

4

43. No tribal police report was provided to Sonia's family regarding her interactions with tribal police on the night of November 23, 2017.

44. Upon information and belief, tribal police officers did not create a report of their interactions with Sonia on the night of November 23, 2017.

45. Had the tribal police officers acted in conformance with the applicable standard of care, Sonia would have received timely medical treatment.

46. Based on her condition, as evidenced in the hotel surveillance video, Sonia would have survived and likely suffered minimal, if any, permanent injury had the tribal police followed standard protocol.

47. The Kayenta Health Center is minutes away from the area where the tribal police detained Sonia.

## COUNT I
## WRONGFUL DEATH

48. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

49. The Navajo Nation tribal police officers who detained Sonia had a duty to exercise reasonable care and to possess and use the degree of skill and learning ordinarily used in the same or similar circumstances by police officers.

50. One or more of the Navajo Nation tribal police officers involved in Sonia's detention on the night of November 23, 2017 breached their duty of reasonable care by, but not limited to:

   a. Failing to provide prompt medical attention to Sonia;
   b. Failing to request medical personnel come to the scene of the detention to evaluate Sonia;
   c. Failing to deliver Sonia to a hospital for treatment;
   d. Failing to deliver Sonia to a police station where she would have been medically evaluated;
   e. Failing to document their interactions with Sonia on November 23, 2017;

      f.    Detaining her at a private hotel against her will; and

      g.    Stealing money from Sonia while she was detained and incapacitated.

51.    As a direct and proximate result of the negligence of defendant USA and its employees, Sonia died.

52.    The USA's negligence resulted in harm to Plaintiff and statutory beneficiaries in an amount to be proved at trial.

***WHEREFORE***, Plaintiff and statutory beneficiaries request that this Court:

A.    Award Plaintiff and statutory beneficiaries compensatory damages in an amount to be proved at trial;

B.    Award taxable costs; and

C.    For such other and further relief as this Court deems just and proper.

DATED this 15th day of August, 2019.

              **BURCH & CRACCHIOLO, P.A.**

By  *s/ John D. Curtis II*
      John D. Curtis
      Matthew J. Skelly
      702 E. Osborn Road, Suite 200
      Phoenix, AZ 85014
      ***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of August, 2019, I electronically transmitted this document to the Clerk of the United States District Court for the District of Arizona by using the CM/ECF System for filing and transmittal to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be mailed to those indicated as non-registered participants.

Lisa M. Hemann
Assistant United States Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, AZ 85004-4449
Lisa.Hemann@usdoj.gov
*Attorneys for United States of America*

By: s/ *Betty Huff*